UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LAURA Y.,

                Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

CASE NO. 3:18-cv-5941-JRC

ORDER ON PLAINTIFF'S
COMPLAINT

      This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local

Magistrate Judge Rule MJR 13. *See also* Notice of Initial Assignment to a U.S. Magistrate Judge

and Consent Form, Dkt. 1; Consent to Proceed Before a United States Magistrate Judge, Dkt. 2.

This matter has been fully briefed. *See* Dkts. 10, 11, 12.

      After considering and reviewing the record, the Court concludes that the ALJ failed to

provide specific and legitimate reasons for rejecting the medical opinion of plaintiff's treating

physician, Dr. Scott. The ALJ did not evaluate Dr. Scott's June 2015 opinion and did not appear

to consider any of Dr. Scott's treatment notes in assessing plaintiff's RFC. The Ninth Circuit has directed the court to "credit as true" opinions such as this that have not been properly considered. Had the ALJ considered and credited Dr. Scott's opinion, along with other evidence supporting that opinion, plaintiff would have been restricted to sedentary work and may have been found disabled by application of the Medical-Vocational guidelines. Nevertheless, because there are outstanding issues to be determined, remand for additional proceedings is the appropriate remedy. Accordingly, this matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g).

<u>PROCEDURAL HISTORY</u>

Plaintiff filed applications for disability insurance benefits ("DIB") pursuant to 42 U.S.C. § 423 (Title I) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act on February 5, 2015 and October 24, 2016 respectively, alleging a disability onset date of June 24, 2014. Administrative Record ("AR") 22, 176-79, 181-86. Plaintiff's applications were denied initially and on reconsideration. *See* AR 22, 110-13, 115-16. Plaintiff's requested hearing was held before Administrative Law Judge Kimberly Boyce ("the ALJ") on September 26, 2017. *See* AR. 42-85. On December 18, 2017, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act. *See* AR 19-33.

On September 17, 2018, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review.  AR. 1-6; *see* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision on November 16, 2018. *See* Dkt. 1. Defendant filed the sealed administrative record regarding this matter on March 14, 2019. *See* Dkt. 8.

Plaintiff, Laura Y., was born in 1963 and was 51 years old on her alleged onset date of June 24, 2014. *See* AR 87. Plaintiff received a bachelor's degree in 1999 and left her most recent job as a grocery store cashier due to her impairments. *See* AR 53-54. Plaintiff went on an approved leave of absence and began receiving short-term disability benefits on June 24, 2014. AR 198, 202, 204, 236. Plaintiff's short-term disability payments ended on December 23, 2014 and she did not return to work after her leave of absence ended. AR 54, 196-97, 203. Instead, plaintiff sought assistance from the Washington State Department of Social and Health Services, Division of Vocational Rehabilitation ("DVR"), to find work that she could do despite her impairments. AR 67-8, 326-27.

According to the ALJ, plaintiff has the severe impairment of degenerative disc disease, and the non-severe impairments of gastroesophageal reflux disease ("GERD"), hypertension, osteoarthritis of the wrists, carpal tunnel syndrome, and adjustment disorder. AR 24-25.

Plaintiff alleges, on the other hand, that she is disabled due to osteomyelitis and an abscess in the L2-L5 epidural space of her lumbar spine. AR 271. Plaintiff alleges that she has ongoing back pain due to the aftereffects of her osteomyelitis and testified that she has difficulty walking more than six steps without an assistive device such as a cane. AR 60. In her function report, plaintiff stated that she is unable to lift more than ten pounds, stand for long periods, or stay in one position. AR 280. Plaintiff stated that she is unable to perform any postural activities and can only walk between 40 and 50 feet before needing to rest. AR 285.

Relying on testimony from a vocational expert ("VE"), the ALJ determined that plaintiff was able to perform her past relevant work as a Cashier/Checker and a Retail Sales Clerk. AR 31-32. 76-77. The ALJ also made alternate step five findings. Based on the vocational expert's

testimony that an individual with the same RFC as plaintiff—and the same age, education, and work experience—could perform jobs existing in significant numbers in the national economy, the ALJ determined that were a significant number of light, unskilled jobs plaintiff could perform despite her impairments. AR 32-33, 77-78.

STANDARD OF REVIEW

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576).

DISCUSSION

In her Opening Brief, plaintiff raises the following issues: (1) whether the ALJ erred by improperly discounting a January 2015 opinion from plaintiff's treating physician, Robert Scott, M.D. and failing to consider Dr. Scott's functional assessment from June 2015; (2) whether the ALJ erred in assigning significant weight to the opinion of State agency consultant Norman Staley, M.D.; and (3) whether the ALJ's errors warrant a finding of disability and remand for award of benefits. *See* Dkt. 10, pp. 3-12.

## I.     Opinions of Dr. Robert Scott

Plaintiff alleges that the ALJ erred in rejecting a January 2015 opinion from plaintiff's treating physician, Dr. Robert Scott, and failing to consider Dr. Scott's functional assessment from June 2015. *See* Dkt. 10, p. 4. Plaintiff contends that Dr. Scott's opinions establish that the physical limitations caused by plaintiff's osteomyelitis persisted for a significant period, and that the ALJ's RFC, which is partly predicated on the assumption that plaintiff's condition improved, is not supported by substantial evidence. *See* Dkt. 10, p. 4.

In assessing an acceptable medical source – such as a medical doctor – the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). Here, the ALJ assigned little weight to Dr. Scott's opinion, and instead assigned significant weight to the opposing opinion of non-examining State agency consultant Norman Staley, M.D., so the "specific and legitimate" standard is applicable here. AR 30.

Plaintiff first began exhibiting symptoms of osteomyelitis in June 2014. Diagnostic imaging of plaintiff's lumbar spine from 2014 supports Plaintiff's allegations concerning her back pain. AR 387-88, 401-02, 457-58. Plaintiff was treated for her osteomyelitis infection with a course of antibiotics, and her condition appeared to stabilize, although plaintiff continued to

complain of ongoing symptoms including back pain, difficulty walking, low energy, and occasional nausea. AR 408-10.

On January 23, 2015, Dr. Scott opined that plaintiff's osteomyelitis infection induced degenerative remodeling causing plaintiff's exertional pain and limiting her ability to stand, lift, and twist. AR 418. Dr. Scott stated that while plaintiff has full use of her arms and legs when seated, she would have difficulty returning to her previous job because her employer did not have seated positions where she could work. AR 418. Dr. Scott assessed plaintiff as needing to avoid prolonged standing for more than 30 minutes and as being unable to lift more than 10 pounds. AR 418. The ALJ assigned little weight to Dr. Scott's January 2015 opinion, reasoning the limitations Dr. Scott assessed were:

> opined well within one year of [plaintiff's] July 2014 bone infection and do
> not represent the claimant's baseline functionality. In addition, Dr. Scott
> specifically relied on the claimant's subjective statements, which are inconsistent
> with the medical evidence of record as discussed above. For example, Dr. Scott
> suggested the claimant's attempt to go back to work was limited because she
> could not find positions where she could work. In addition, there is no indication
> Dr. Scott expected the claimant to experience such serious limitations for twelve
> months, and the opinion does not meet the durational requirements.

AR 30 (internal citations omitted). The ALJ has not provided specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Scott's opinion. The ALJ reasons that Plaintiff's condition improved, and that plaintiff's condition could not be classified as severe because she did not experience serious limitations for twelve months. AR 30.

The ALJ's reasoning is not supported by substantial evidence. Plaintiff continued seeing Dr. Scott for her back pain. In June 2015, Dr. Scott again noted that plaintiff's osteomyelitis induced degenerative remodeling and opined plaintiff was permanently disabled from standing at rotating at the trunk and could not easily get below a seated position. AR 436. Dr. Scott further assessed plaintiff as being unable to lift or carry more than 10 pounds, walk more than 25 to 30

feet without sitting, or stand for more than 25 to 30 minutes without leaning for support. AR 436. Dr. Scott opined that plaintiff is only symptom free when seated and could return to work in a position where she sat most of the time, was able to get up and sit down freely, and could use her hands and arms as needed. AR 436.

The ALJ did not discuss Dr. Scott's June 2015 opinion in her hearing decision nor did she address Dr. Scott's handwritten treatment notes in any detail. The Ninth Circuit has held that failing to discuss a medical opinion does not constitute harmless error. *Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012) ("the ALJ's disregard for Dr. Johnson's medical opinion was not harmless error and Dr. Johnson's opinion should have been considered") (*citing* 20 C.F.R. § 404.1527(c) (noting that this Ruling requires the evaluation of "every medical opinion" received)). When the ALJ ignores significant and probative evidence in the record favorable to a claimant's position, such as an opinion from an examining or treating doctor, the ALJ "thereby provide[s] an incomplete residual functional capacity [RFC] determination." *See id.* at 1161. Furthermore, when the RFC is incomplete, the hypothetical question presented to the vocational expert relied on at step five necessarily also is incomplete, "and therefore the ALJ's reliance on the vocational expert's answers [is] improper." *See id.* at 1162.

Dr. Scott's January 2015 opinion establishes that plaintiff's osteomyelitis induced degenerative remodeling that causes many of plaintiff's exertional limitations. AR 418. Dr. Scott offered a more detailed opinion in June 2015, this time including more specific functional limitations consistent with a sedentary RFC. AR 436. Dr. Scott's June 2015 opinion contradicts the ALJ's finding that his January 2015 opinion did not represent plaintiff's baseline functionality. The fact that Dr. Scott's opinion was rendered more than one year after plaintiff's alleged onset date also contradicts the ALJ's reasoning.

Defendant does not address plaintiff's contention that the ALJ failed to evaluate Dr. Scott's June 2015 opinion. Defendant instead attempts to transfer the ALJ's reasoning regarding Dr. Scott's January 2015 to his June 2015 opinion, arguing that the ALJ assigned little weight to both opinions. Dkt. 11, p. 10. But, in actuality, the ALJ didn't address the second opinion. Dr. Scott acquired new information concerning plaintiff's condition while treating her during the 6-month period between his two opinions. AR 436-41. Dr. Scott's later June 2015 opinion offers a more detailed assessment of plaintiff's functional capacity and confirms that the limitations caused by plaintiff's initial infection lasted more than one year, and those treatment notes from this period were not considered by the ALJ.

Further, the record reveals several entries after Dr. Scott's initial January determination that do not appear to be referenced or considered by the ALJ. These treatment notes confirm Dr. Scott's assessment that plaintiff had an ongoing spinal deformity stemming from a remodeling process that was causing degenerative joint disease and indicate that plaintiff continued to complain of back pain and had difficulties performing exertional activities. AR 437-39. Dr. Scott observed that on several occasions, plaintiff used a cane to assist with ambulation. AR 437-40.

Taken together, Dr. Scott's opinions and his treatment notes establish that while Plaintiff's osteomyelitis infection may have resolved, plaintiff had ongoing physical limitations stemming from her infection that the ALJ did not account for in assessing plaintiff's RFC. The ALJ's error is not harmless. Had the ALJ considered Dr. Scott's June 2015 opinion and his treatment notes, the ALJ's narrative about the course of plaintiff's impairment would have been significantly different. The ALJ found that plaintiff's allegations of "extremely limiting symptoms" were not consistent with the record. AR 29. The ALJ further reasoned that given plaintiff's allegations of back pain, one would expect her treating providers to note some degree

of pain or discomfort during office visits, and the absence of such observations was inconsistent with plaintiff's allegations of extremely limiting pain. AR 28-29. Had the ALJ evaluated Dr. Scott's opinion and his treatment notes, she would have found information consistent with plaintiff's pain allegations.

Had she fully evaluated Dr. Scott's opinion and the treatment notes they were based, the ALJ might have found his assessment consistent with other opinions in the record.

*Application of Medical-Vocational Guidelines*

Had Dr. Scott's opinion been considered and credited, plaintiff would have been restricted to sedentary work, which the vocational expert testified would preclude the performance of all her past relevant work. AR 31-32, 76-77. The vocational expert also testified that plaintiff would not have been able to perform the jobs at the light exertional level cited by the ALJ in her alternate step five findings. AR 32-33, 77-78.

Plaintiff contends that if Dr. Scott's opinions were credited and she were restricted to sedentary work, she would be disabled under the Medical-Vocational Guidelines given her age, education, and apparent lack of transferrable skills. Dkt. 10, p. 10. Plaintiff erred in contending that she is disabled pursuant to Medical-Vocational Rule 201.10. Dkt. 10, p. 10. Rule 201.10 applies to individuals with a limited education. Social Security Administration Regulations, Part 404, Subpart P, App. 2, § 202.00; App. 2, Table No. 2, Rule 201.10. Plaintiff obtained a bachelor's degree in 1999. AR 53, 272. Therefore, this case should more appropriately be evaluated under Rule 201.14.

In addition to the age criteria, for Rule 201.14 to apply, an individual must have no transferable skills and be a high school graduate or more whose education does not provide for direct entry into skilled work. Social Security Administration Regulations, Part 404, Subpart P,

App. 2, § 202.00; App. 2, Table No. 2, Rule 201.14. The criterion of "high school graduate or more -- provides for direct entry into skilled work" is met when there is little time lapse between the completion of formal education and the date of adjudication, and where the content of the education would enable individuals, with a minimal degree of job orientation, to begin performing the skilled job duties of certain identifiable occupations within their RFC. *See* SSR 83-10. Plaintiff graduated from college in 1999. AR 53, 272. While there is nothing to suggest that plaintiff would be able to begin a new, skilled job with a minimal degree of job orientation 20 years after she graduated from college, the vocational expert has not offered any testimony on this point.

Because the ALJ decided this case at step four of the sequential evaluation, she did not make specific findings concerning plaintiff's transferable skills. However, the vocational expert testified at the hearing that the cash handling and customer service skills plaintiff acquired as a cashier would transfer to other sedentary customer service jobs. AR 81. When asked by the ALJ to cite jobs to which plaintiff's skills would transfer, the VE stated that while plaintiff's skills would transfer to other sedentary jobs with a specific vocational preparation ("SVP") of three or four, the jobs he found were generally at a higher SVP level than plaintiff's and were not closely related to plaintiff's past work. AR 82-83.

"Transferability is most probable and meaningful among jobs in which ... the same or a lesser degree of skill is required" and in "the same or similar raw materials, products, processes, or services are involved." 20 C.F.R. §§ 404.1568(d)(2), 416.968. This fact is reiterated in Social Security Ruling 82–41, which explains that "people are not expected to do more complex jobs than they have actually performed." The VE testified that plaintiff's skills would principally transfer to jobs not closely related to plaintiff's past work and with a higher SVP level. *See* 20

C.F.R. §§ 404.1565(a), 416.965(a) ("If you cannot use your skills in other skilled or semiskilled work, we will consider your work background the same as unskilled."). While the vocational expert's testimony implies that plaintiff would not have any meaningful transferable skills, this testimony is insufficiently clear for the Court to conclude that plaintiff does not have skills that would transfer to other sedentary jobs.

## II. Opinion of Dr. Norman Staley

Plaintiff argues that the ALJ committed legal error by basing her opinion solely upon the opinion of non-examining State agency consultant Dr. Norman Staley. Dkt. 10, p. 11. Plaintiff contends that Dr. Staley's October 2015 opinion is contradicted by opinions from plaintiff's treating sources and was rendered without the benefit of a personal examination. Dkt. 10, p. 11.

Dr. Staley assessed plaintiff as being able to perform work at the light exertional level, with a range of additional postural and environmental restrictions. AR 104-106. To discount the opinion of an examining physician in favor of the opinion of a non-examining medical advisor, the ALJ must set forth specific, legitimate reasons that are supported by substantial evidence in the record." *Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (citing *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995)). The ALJ assigned Dr. Staley's opinion significant weight, reasoning that Dr. Staley's opinion was consistent with plaintiff's generally minimal examination findings, plaintiff's lack of follow through with treatment recommendations, and the lack of observations from examining sources that Plaintiff was in significant distress. AR 30.

The ALJ has not provided specific, legitimate reasons for rejecting the opinions of plaintiff's examining sources in favor of Dr. Staley's. As discussed above, the ALJ has not provided any rationale for not considering crucial opinion and treating evidence from Plaintiff's treating physician, Dr. Scott, which contradicts Dr. Staley's assessment.

### III.    Remedy

When the Commissioner errs in evaluating a claimant's application for disability, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit has put forth a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). It is appropriate when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman,* 211 F.3d at 1178 (quoting *Smolen*, 80 F.3d at 1292). Here, the ALJ has failed to provide any reasons at all for not considering the opinion evidence and treatment notes of plaintiff's treating physician, Dr. Scott. As such, the Court must credit as true Dr. Scott's opinion that plaintiff is restricted to performing sedentary work. There are however, outstanding issues to be resolved before a determination of disability can be made in this case. Specifically, the ALJ must determine whether plaintiff, who is restricted to performing no more than sedentary work, is disabled pursuant to Medical-Vocational Rule 201.14. On remand, the ALJ should consult a vocational expert as necessary to resolve this question. Because there are outstanding issues to be determined, remand is the appropriate remedy. Accordingly, this matter should be remanded pursuant to sentence four of 42 U.S.C. § 405(g).

## CONCLUSION

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration consistent with this order.

**JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Dated this 13th day of June, 2019.

J. Richard Creatura
United States Magistrate Judge